# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

No. 23-3140

ABRAHAM ITUAH,

Appellant,

V.

CITY OF PHILADELPHIA, ET AL.

Appellees.

## BRIEF FOR APPELLEES PAMELA THURMOND, BRENDAN PHILBIN, AND JOSEPH CARROLL

Appeal from the November 6, 2023 Order Granting Appellees' Motion for Summary Judgment Issued by the United States District Court for the Eastern District of Pennsylvania, the Honorable Gerald J. Pappert, at No. 19-cv-5088.

CITY OF PHILADELPHIA LAW DEPARTMENT
RENEE GARCIA, ACTING CITY SOLICITOR

By: Meghan Byrnes, Esq.
Deputy City Solicitor, Appeals Unit
I.D. No. 321316
1515 Arch Street, 17th Floor
Philadelphia, PA 19102
(215) 683-5011
meghan.byrnes@phila.gov
*Attorney for Appellees*

Date: February 23, 2024

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ..................................................................... i

TABLE OF AUTHORITIES .............................................................. ii

COUNTERSTATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION ............................................................................. 1

COUNTERSTATEMENT OF THE ISSUES PRESENTED ON APPEAL ........... 2

COUNTERSTATEMENT OF THE STANDARD OF REVIEW ......................... 3

COUNTERSTATEMENT OF THE FACTS ....................................................... 4

    A.  Mr. Ituah files for bankruptcy in New York. .............................. 4

    B.  The City files a condemnation action to demolish Mr. Ituah's property at 508 W. Tabor Road due to an imminently dangerous condition. .............................. 5

    C.  Mr. Ituah's files for bankruptcy in Pennsylvania. ....................... 7

    D.  Mr. Ituah files a federal action including claims related to the Tabor Property and other actions by the Individual Defendants related to Mr. Ituah's personal bankruptcies. ..................................................................... 8

    E.  On remand, the District Court grants summary judgment on all claims in favor of Philbin, Carroll, and Thurmond. ....................................... 10

SUMMARY OF ARGUMENT ..................................................................... 11

ARGUMENT ................................................................................................ 12

    A.  The Takings claim fails as a matter of law where the City demolished Mr. Ituah's imminently dangerous property using its police power ....................... 12

    B.  The District Court properly granted summary judgment in favor of Ms. Thurmond for lack of personal involvement or any causal connection between his protected conduct and the claimed retaliatory acts ..................... 16

CONCLUSION .......................................................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ................................................................ 3

*Andrus v. Allard*,
  444 U.S. 51 (1979) .................................................................. 14

*Baloga v. Pittston Area Sch. Dist.*,
  927 F.3d 742 (3d Cir. 2019) ..................................................... 17

*Duffy v. Kent Cty. Levy Ct.*,
  591 F. App'x 41 (3d Cir. 2014) ................................................ 13

*Estate of Smith v. Marasco*,
  318 F.3d 497 (3d Cir. 2003) ..................................................... 21

*George v. Rehiel*,
  738 F.3d 562 (3d Cir. 2013) ..................................................... 14

*In re 106 N. Walnut, LLC*,
  447 F. App'x 305 (3d Cir. 2011) .............................................. 13

*Ituah v. City of Philadelphia*,
  No. 21-1213, 2022 WL 4464380 (3d Cir. Sept. 26, 2022) .......... 4

*Kelly v. Borough of Carlisle*,
  622 F.3d 248 (3d Cir. 2010) ..................................................... 15

*Keystone Bituminous Coal Ass'n v. DeBenedictis*,
  480 U.S. 470 (1987) ................................................................ 12

*Malley v. Briggs*,
  475 U.S. 335 (1986) ................................................................ 15

*MD Mall Assocs., LLC v. CSX Transp., Inc.*,
  715 F.3d 479 (3d Cir. 2013) ..................................................... 20

*Messerschmidt v. Millender*,
  565 U.S. 535 (2012) ................................................................ 15

*Mullenix v. Luna*,
  577 U.S. 7 (2015) .................................................................... 15

*Munoz v. City of Union City*,
  481 F. App'x 754 (3d Cir. 2012) .............................................. 14

*Nat'l Amusements Inc. v. Borough of Palmyra*,
  716 F.3d 57 (3d Cir. 2013) ....................................................... 13

*PIM Brands Inc. v. Haribo of America Inc.*,
  81 F. 4th 317 (3d Cir. 2023) ...................................................... 3

*Ray v. Twp. of Warren*,
   626 F.3d 170 (3d Cir. 2010) ........................................................... 15

*Rehberg v. Paulk*,
   566 U.S. 356 ..................................................................................... 21

*Rode v. Dellarciprete*,
   845 F.2d 1195 (3d Cir. 1988) ............................................. 3, 17, 22

*Saunders v. BB&T Bank*,
   852 F. App'x 651 (3d Cir. 2021) ................................................... 21

*Soldal v. Cook Cty. Ill.*,
   506 U.S. 56 (1992) ........................................................................... 16

*Tourscher v. McCullough*,
   184 F.3d 236 (3d Cir. 1999) ............................................................ 3

**Statutes**

11 U.S.C. § 362(a)(6) ........................................................................ 19
11 U.S.C. § 362(b)(4) ........................................................................ 19
28 U.S.C. § 1291 .................................................................................. 1
28 U.S.C. § 1331 .................................................................................. 1
U.S. Const. amend. V ......................................................................... 12

**Rules**

Fed. R. Civ. P. 56(a) ........................................................................... 3
Pa. R.C.P. 3136 .................................................................................... 5

# COUNTERSTATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

This is an appeal from the District Court's November 6, 2023 Order granting summary judgment in favor of Defendant-Appellees Pamela Thurmond, Brendan Philbin, and Joseph Carroll on plaintiff-Appellant Abraham Ituah's civil rights claims. Mr. Ituah filed a timely appeal to this court on December 4, 2023. Supplemental Appendix ("SAppx") at 1-3 (cited as "SAppx[p. #]" herein). The District Court had jurisdiction pursuant to 28 U.S.C. § 1331. This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

# COUNTERSTATEMENT OF THE ISSUES PRESENTED ON APPEAL

1.      Did the District Court properly find that defendants Brendan Philbin and Joseph Carroll did not violate Mr. Ituah's Fifth Amendment rights under the Takings Clause as a matter of law following the demolition of one of his properties because these defendants acted pursuant to the City's police power to abate an imminently dangerous property?

*Suggested Answer: Yes*

2.      Did the District Court properly grant summary judgment in favor of defendant Pamela Thurmond on Mr. Ituah's First Amendment retaliation claim where: (1) there is no record evidence that Ms. Thurmond had any personal involvement in any of the actions or inaccuracies he complains of; and (2) he adduced no causal connection between his protected conduct (filing a bankruptcy action in 2018) and the alleged retaliatory acts?

*Suggested Answer: Yes*

# COUNTERSTATEMENT OF THE STANDARD OF REVIEW

This Court's standard of review of a grant of a motion for summary judgment under Federal Rule of Civil Procedure 56 is *de novo*. *PIM Brands Inc. v. Haribo of America Inc.*, 81 F. 4th 317, 320 (3d Cir. 2023). This Court may affirm on any ground supported by the record. *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999).

A plaintiff cannot survive a motion for summary judgment under Rule 56 without showing "a genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). A plaintiff must "set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (internal quotations omitted). "[T]he mere existence of *some* alleged factual dispute" between the parties will not defeat a motion for summary judgment. *Id.* at 247-8 (emphasis original). Further, a "defendant in a civil rights action must have personal involvement in the alleged wrongs" of the case, and a complaint must allege such personal involvement "with appropriate particularity." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

## COUNTERSTATEMENT OF THE FACTS

This case returns for the second time on appeal from this Court's partial remand in 2022. *See Ituah v. City of Philadelphia*, No. 21-1213, 2022 WL 4464380 (3d Cir. Sept. 26, 2022); *see also* SAppx133-43 (3d Cir. Op.). The subjects of this appeal are Mr. Ituah's two remaining constitutional claims against three employees of the City of Philadelphia—Brendan Philbin, Joseph Carroll, and Pamela Thurmond. Mr. Ituah's claims arise from the City's participation as a creditor in two of his personal bankruptcy cases and the City's demolition of his building at 508 W. Tabor Road in 2019 to mitigate an imminently dangerous condition.

### A. Mr. Ituah files for bankruptcy in New York.

On March 16, 2018, Mr. Ituah filed for personal bankruptcy in the Southern District of New York. SAppx023 (Thurmond Decl. ¶ 4); SAppx028. As one of Mr. Ituah's creditors, the City participated in bankruptcy proceedings represented by City attorney Pamela Thurmond. SAppx023 (Thurmond Decl. ¶¶ 2-3, 5). Because the case was in New York, Ms. Thurmond requested that Mr. Ituah consent to allow her participation by telephone, but Mr. Ituah declined. *Id.* (*Id.* ¶ 6). As a result, Ms. Thurmond attended one hearing in New York. SAppx024 (*Id.* ¶ 8).

During the bankruptcy, Ms. Thurmond effected several filings and transactions on the City's behalf, some of which described and valued Mr. Ituah's assets. *See* SAppx023-24 (*Id.* ¶¶ 7, 15). At one point, she learned that the

Philadelphia Sheriff's Office held $11,112.54 excess proceeds[1] owed to Mr. Ituah remaining after the sheriff's sale of his property at 3843 Fairmount Avenue. SAppx014 (*Id.* ¶¶ 10, 13). Ms. Thurmond transmitted the funds to the bankruptcy trustee because the funds were part of the bankruptcy estate available for distribution to creditors. *Id.* (*Id.* ¶¶ 14-15); *See* SAppx042-52.

On December 11, 2018, per Mr. Ituah's request, the bankruptcy court dismissed the case. SAppx024; SAppx40.

## B. The City files a condemnation action to demolish Mr. Ituah's property at 508 W. Tabor Road due to an imminently dangerous condition.

On December 27, 2018, L&I[2] inspector Joseph Carroll inspected a house owned by Mr. Ituah at 508 W. Tabor Road (the "Tabor Property") and issued a

---

[1] When a property in Philadelphia is sold at a sheriff's sale for an amount greater than the debt being collected, the difference is distributed to other creditors after the payment of costs, and then to the property owner if any remains. *See* Pa. R.C.P. 3136; *see* SAppx024 (Thurmond Decl. ¶¶ 11-12). The Sheriff's Office determines which payments to make by ordering a title insurance policy for the property from a title insurance company that lists the distributions and the amounts owed, called a Title Distribution Policy. *See* SAppx042-52. According to the Title Distribution Policy for Mr. Ituah's property, Mr. Ituah was owed $11,112.54 in excess proceeds after creditors were paid. SAppx045-46.

[2] As provided by the Administrative Code of the City of Philadelphia (Subcode "A") of Title 4 of the Philadelphia Code of General Ordinances at A-401.2, it is the duty of the Department of Licenses and Inspections ("L&I") to inspect premises in the City of Philadelphia to determine compliance with the requirements of the Philadelphia Code, issue notices of violation to individuals who are not in compliance with the Philadelphia Code, and to bring legal actions against

Notice of Violation, citing that "an improperly anchored, bulging, and improperly braced side load bearing wall" created an imminently dangerous condition risking collapse. SAppx066-67.

Afterwards, on January 2, 2019, City attorney Brendan Philbin filed a Petition for a Temporary Restraining Order and Preliminary Injunction to allow the City to demolish the Tabor Property. SAppx053; SAppx60-77. Mr. Ituah responded, and after an evidentiary hearing later that day attended by Mr. Ituah, the Court of Common Pleas entered an order authorizing demolition.[3] *See* SAppx55; SAppx078; SAppx087-89. Mr. Ituah appealed the order to the Commonwealth Court the

---

individuals in violation of the Code pursuant to A-501.1, A-502, *et seq.*, and A-503 *et seq.*

[3] At that hearing, another building inspector, Thomas Rybakowski testified that he inspected the structure and confirmed Mr. Carroll's initial observations regarding the bulging side wall, concluding that it had lost all structural integrity. SAppx082 (N.T. 1/3/19 15:3-11). Inspector Rybakowski further described his observations that the third floor of the structure had been illegally added without a permit, increasing the load on the failing wall. *Id.* (N.T. 1/3/19 15:16-16:9). His overall conclusion was that these conditions presented "the potential of a very serious collapse" that would pose a danger to the public, remaining occupants of the property, and the adjoining properties. SAppx083 (N.T. 1/3/19 17:7-13). Although Mr. Ituah argued that the property could be repaired, he did not present any evidentiary support of this claim or expert testimony. *See* SAppx084 (N.T. 1/3/19 22:15-25:25).

following day but did not seek a stay of the demolition. SAppx056.[4] Absent a court-ordered stay, the City demolished the property on January 11, 2019. SAppx094.

## C. Mr. Ituah's files for bankruptcy in Pennsylvania.

Mr. Ituah filed another bankruptcy case in January 2020 in the Eastern District of Pennsylvania. SAppx025 (Thurmond Decl. ¶ 18); SAppx096. Ms. Thurmond again represented the City as a creditor in the proceeding. SAppx025 (Thurmond Decl. ¶ 19). Among other filings, Ms. Thurmond filed proof of the City's claims for outstanding water debts. *Id.* (*Id.* ¶ 20). Another City attorney (who is not a defendant) filed a proof of claim for Mr. Ituah's tax debts (the "Tax Proof of Claim") owed to the City, which attached a list of properties owned by Mr. Ituah along with their valuations, including a property at 33 S. 53rd Street valued at $210,355.00. *Id.* (*Id.* ¶¶ 21-23); SAppx107-13 (Tax Proof of Claim). Ms. Thurmond later filed an objection to the confirmation of Mr. Ituah's proposed bankruptcy plan based in part on its failure to provide full payment of the City's claims. SAppx026 (Thurmond Decl. ¶¶ 26-27); SAppx102. The objection referenced the Tax Proof of Claim and attached a copy of it as an exhibit. SAppx026 (Thurmond Decl. ¶ 27). On August 18, 2020, the bankruptcy trustee moved to dismiss the bankruptcy based on Mr.

---

[4] The Commonwealth Court quashed Plaintiff's appeal on May 10, 2019 as moot and because Mr. Ituah failed to file a statement of issues required by Pa. R. App. 1925(b). SAppx090-93.

Ituah's delay, which the bankruptcy court granted. SAppx026 (Thurmond Decl. ¶¶ 28-29); SAppx102-03.

### D. Mr. Ituah files a federal action including claims related to the Tabor Property and other actions by the Individual Defendants related to Mr. Ituah's personal bankruptcies.

On October 30, 2019, Mr. Ituah filed the instant suit. SAppx007 (Dist. Ct. Docket). His original complaint raised several constitutional claims respecting the Tabor Property, Mr. Ituah's two bankruptcies, and his property located at 3843 Fairmount Avenue. SAppx129 (Compl. at p. 4). The District Court dismissed the original complaint as untimely, barred by *res judicata*, and held that it otherwise failed to state a claim. SAppx018.

Mr. Ituah filed an amended complaint[5] again asserting a variety of constitutional violations against the City and several of its attorneys and employees, including Brendan Philbin, Joseph Carroll, and Pamela Thurmond. *See* SAppx133-38 (Am. Compl.).

The amended complaint averred that Philbin and Carroll violated Mr. Ituah's Fifth Amendment rights under the Takings clause through their participation in the

---

[5] In its Opinion, the District Court noted that in the Amended Complaint, Mr. Ituah may have inadvertently omitted pertinent facts from the Original Complaint. SAppx005-06 (Dist. Ct. Op. at pp. 1-2). In deference to Mr. Ituah's *pro se* status, the District Court analyzed his claims arising from the facts presented in both the Original and Amended Complaints. Accordingly, this brief also analyzes Mr. Ituah's claims based on the facts set forth in both complaints.

condemnation process leading to the demolition of the Tabor Property. SAppx124-25.

Mr. Ituah further alleged that Ms. Thurmond engaged in a retaliatory campaign in conjunction with his personal bankruptcies, all stemming from his bankruptcy filing in New York and his failure to consent to her request to attend hearings via telephone. SAppx135-36 (Am. Compl. ¶ 5). Specifically, Mr. Ituah claimed that, in violation of the First Amendment, Ms. Thurmond: (1) intentionally refunded the incorrect amount of excess proceeds ($11,112.54) from the sheriff's sale of the Fairmount Avenue property to the New York bankruptcy trustee; (2) encouraged the City to demolish the Tabor Property; (3) submitted an incorrect valuation ($210,355.00) on the Tax Proof of Claim form for his 53rd Street property; (4) generally "engineer[ed] inaccurate bills" and collections; and (5) "pressed" the bankruptcy court to dismiss Mr. Ituah's Pennsylvania bankruptcy. *Id.*

Upon the City's motion, the District Court dismissed Mr. Ituah's amended complaint against all defendants. SAppx019. Mr. Ituah appealed, and although this Court largely affirmed the District Court's decision, it vacated and remanded the Takings claim against Carroll and Philbin and the First Amendment retaliation claim against Thurmond for factual development. *See* SAppx143-53.

**E. On remand, the District Court grants summary judgment on all claims in favor of Philbin, Carroll, and Thurmond.**

On remand, the defendants answered the amended complaint and engaged in discovery with Mr. Ituah. Following discovery, the District Court granted summary judgment in favor Caroll, Philbin, and Thurmond. SAppx024.

In its opinion, the District Court held that Mr. Ituah's Takings claims failed because Mr. Carroll and Mr. Philbin acted pursuant to the City's legitimate police power in demolishing the Tabor Property as it posed an imminent danger to public safety. SAppx012-13 (Dist. Ct. Op. at 8-9).

Respecting Mr. Ituah's First Amendment retaliation claim against Ms. Thurmond, the District Court first acknowledged that Mr. Ituah's act of filing a bankruptcy petition is conduct protected by the First Amendment. Notwithstanding, it held that this claim failed because Mr. Ituah adduced no evidence of Ms. Thurmond's personal involvement in any of the claimed "retaliatory" acts, and crucially, a "causal link"—temporal or otherwise—between his protected conduct and the alleged retaliation. SAppx011 (Dist. Ct. Op. at 7).

## SUMMARY OF ARGUMENT

Mr. Ituah's claims against Carroll and Philbin fail because the Fifth Amendment's Takings Clause is not implicated where a municipality used its police power to ensure public safety in remediating a dangerous condition. There is no dispute that Carroll and Philbin acted under a valid order from the Court of Common Pleas which determined, after an evidentiary hearing, that the Tabor Property was imminently dangerous and that its demolition served public safety interests. Further, because Mr. Ituah retained his possessory interest in the land, there is no cognizable "taking." Failing that, and in the alternative, Carroll and Philbin are entitled to qualified immunity because it far from "clearly established" that their actions violated Mr. Ituah's constitutional rights.

The District Court also properly granted summary judgment in favor of Ms. Thurmond. Despite Mr. Ituah's sweeping claims of her misconduct and miscalculations, he failed to adduce any evidence of her knowledge of—let alone her direct involvement in—any of these claimed retaliatory actions. Ms. Thurmond submitted a declaration that although she filed proofs of claim and other documents in the bankruptcies containing financial information about Mr. Ituah's property and amounts owed to the City, she was not personally involved in gathering or calculating that data. Nor did Mr. Ituah, at any point, show that the information Ms. Thurmond transmitted was even incorrect. Finally, Ms. Thurmond did not encourage

the City to demolish the Tabor Property, as Mr. Ituah claims, because she was not even aware of the demolition of the Tabor Property until Mr. Ituah named her as a defendant in the instant case. And, even if she were personally involved, Mr. Ituah still did not evince any causal thread connecting the protected conduct (filing the New York bankruptcy in March 2018) to any of the alleged retaliation.

## ARGUMENT

### A. The Takings claim fails as a matter of law where the City demolished Mr. Ituah's imminently dangerous property using its police power.

The District Court properly granted summary judgment on Mr. Ituah's remaining Fifth Amendment Takings claim against Carroll and Philbin for the demolition of the Tabor Property because they acted not pursuant to eminent domain, but rather they acted pursuant to the City's police power to abate a public safety issue. SAppx134-35 (Am. Compl. ¶ 4); SAppx013 (Dist. Ct. Op. at p. 9).

The Fifth Amendment's Takings Clause prohibits the government from taking private property for public use without providing just compensation. U.S. Const. amend. V. However, it well-settled that there can be no Takings claim where, as here, a municipality acted pursuant to its police power to ensure public safety in remediating a nuisance or dangerous condition. *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 490 (1987) (a state's justified exercise of its police power to prevent "impending danger" does not require compensation under the

Takings Clause); *Nat'l Amusements Inc. v. Borough of Palmyra*, 716 F.3d 57, 63 (3d Cir. 2013) (no Takings claim where borough shut down market to abate dangerous condition); *Duffy v. Kent Cty. Levy Ct.*, 591 F. App'x 41, 44-45 (3d Cir. 2014) (nonprecedential) (county's demolition of unsafe structures did not implicate Takings clause); *In re 106 N. Walnut, LLC*, 447 F. App'x 305, 309 (3d Cir. 2011) (nonprecedential) (same).

Here, the City demolished an unsafe structure to further the legitimate purpose of promoting public safety, not to further its eminent domain powers. As the District Court noted, Mr. Philbin and Mr. Carroll acted pursuant to the City's Property Maintenance Code, which authorizes demolition of structures in "imminent danger of failure or collapse." Phila. Code §§ PM-101.3, PM-110.1. Although Mr. Ituah argues the Tabor Property was "repairable"[6] and not imminently dangerous, he does

---

[6] In his brief, Mr. Ituah suggests that the Philadelphia Code requires a specific amount of time for a property owner to make repairs, but he is mistaken. Ituah Br. at 11. The relevant Code provision provides: "If an imminently dangerous condition is found, the code official shall serve on the owner . . . written notice describing the imminent danger and specifying the required repair to render the structure safe, *or* requiring the imminently dangerous structure or portion thereof to be demolished *within a stipulated time*." Phila. Code. PM-1110.2 (emphasis added). While Mr. Ituah focuses on the latter portion, the first clause permits the City to require repair—as it did here—without any time frame. SAppx076-77 (ECF No. 41-4, at 18-19 (NOV)).

not dispute the property could not safely remain in its condition.[7] Dist. Ct. Op. at 10. Indeed, another City inspector, Thomas Rybakowski, testified that the structure posed a hazard to the public at a hearing before the Court of Common Pleas, which ultimately authorized demolition through judicial order. *Id.*; SAppx087-89. Accordingly, the District Court correctly held that demolition was an appropriate exercise of the City's police powers that required no compensation.[8]

Alternatively, even if their actions did somehow amount to a constitutional violation, Philbin and Carroll would be entitled to qualified immunity. It is far from "clearly established" that issuing a condemnation notice and pursuing a court order to demolish a dangerous structure violate any constitutional right.

Qualified immunity shields a government official from federal claims unless it is "beyond debate" that the federal right they allegedly violated was "clearly established at the time of the challenged conduct." *George v. Rehiel*, 738 F.3d 562,

---

[7] Although Mr. Ituah refers to having hired an engineer and he filed an engineer's letter as an exhibit before the District Court, he did not provide any letter from an engineer to the City prior to demolition or at the hearing before the Court of Common Pleas. SAppx154; SAppx094 (Rybakowski Decl. ¶ 13). And, in any event, the engineer's letter confirmed that the property was in imminently dangerous condition. SAppx154.

[8] In any event, because Mr. Ituah retained a possessory interest in the land despite demolition of the structure on it, his Takings claim would still fail because he "was not deprived of all beneficial uses of his property." *See Munoz v. City of Union City*, 481 F. App'x 754, 759 (3d Cir. 2012) (nonprecedential) (citing *Andrus v. Allard*, 444 U.S. 51, 65-66 (1979) (no taking occurred where plaintiff retained possessory interest in property).

572 (3d Cir. 2013) (internal quotation marks omitted); *see also Ray v. Twp. of Warren*, 626 F.3d 170, 173 (3d Cir. 2010) ("[I]f a reasonable officer is not on notice that his or her conduct under the circumstances is clearly unlawful, then application of qualified immunity is appropriate."). Further, official acts taken pursuant to a court order confers immunity unless "it is obvious that no reasonably competent officer would have concluded that a warrant should issue[.]" *Kelly v. Borough of Carlisle*, 622 F.3d 248, 254 (3d Cir. 2010) (quoting *Malley v. Briggs*, 475 U.S. 335, 345 (1986)).

Here, taking all his allegations as true, Mr. Ituah would need to demonstrate it was "clearly established" that demolishing an imminently dangerous but allegedly "repairable" building was a constitutional violation and not a permissible exercise of the police power. However, Mr. Ituah made no effort to identify any clearly established body of case law supporting this right, nor can we find any. That alone is fatal to Mr. Ituah's claim.

Even if he had made this showing, Mr. Ituah still could not demonstrate that "every reasonable official" would have understood that demolishing the Tabor Property violated that right, particularly where they acted under court order. *See Mullenix v. Luna*, 577 U.S. 7, 13 (2015); *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012). Nothing in this case suggests that it would have been unreasonable for City officials to rely on the court's order approving the demolition. *See, e.g.*, *Malley*,

475 U.S. at 345. Indeed, this Court already determined that Philbin and Carroll acted reasonably when it affirmed dismissal of Mr. Ituah's Fourth Amendment claims against them for these same actions. *See* SAppx150 ("[B]ased on Ituah's allegations and brief, the demolition was carried out by a state-court order issued after a hearing. Ituah has failed to allege facts that could arguably fulfill the 'laborious task' of establishing the unreasonableness of the demolition." (citing *Soldal v. Cook Cty. Ill.*, 506 U.S. 56, 61 (1992)).

Thus, because Mr. Ituah has not alleged any clearly established right, nor has alleged that Philbin and Carroll were unreasonable to rely on the court's authorization, they are entitled to qualified immunity and summary judgment in their favor for this additional and independent reason.

## B. The District Court properly granted summary judgment in favor of Ms. Thurmond for lack of personal involvement or any causal connection between his protected conduct and the claimed retaliatory acts.

Mr. Ituah's First Amendment retaliation claim fails against Ms. Thurmond because there is no record evidence of her personal involvement in, or knowledge of, any of the actions or inaccuracies he claims to be retaliatory. Further, he presented nothing linking his protected conduct—filing the New York bankruptcy—to any of Ms. Thurmond's undertakings as an attorney acting on behalf of the City.

To prove First Amendment retaliation, a plaintiff must show: (1) that they engaged in constitutionally protected conduct; (2) that the defendant took retaliatory

action sufficient to deter a person of ordinary firmness from exercising constitutional rights;[9] and (3) a causal link between the constitutionally protected conduct and the retaliatory action. *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 752 (3d Cir. 2019). Crucially, the defendant must have "personal involvement" in the alleged retaliation to be liable. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

Mr. Ituah contends Ms. Thurmond engaged in a series of retaliatory actions purportedly spurred by his refusal to consent to her telephonic participation in his New York bankruptcy case. SAppx135-36 (Am. Compl. ¶ 5). In its first opinion, this Court established that Mr. Ituah's bankruptcy filing itself is conduct protected by the First Amendment, a conclusion neither party disputes. Mr. Ituah filed his New York bankruptcy on March 16, 2018, and Ms. Thurmond attended only one hearing in New York prior to the case's dismissal eight months later in December 2018. SAppx024.

Again, despite the short-lived bankruptcy case, Mr. Ituah alleges that Ms. Thurmond engaged in a lengthy retaliation campaign. Namely, he alleges that she:

- "Encouraged" City officials to demolish the Tabor Property;

---

[9] In its Opinion, this Court found that the behavior Mr. Ituah alleged against Ms. Thurmond, if true, would satisfy this second prong. SAppx148. But, as we explain below, Mr. Ituah did not show that Ms. Thurmond took these actions or that she had knowledge of any miscalculations in her bankruptcy filings.

- Intentionally refunded the incorrect amount ($11,112.54) to Mr. Ituah following a 2018 Sheriff's Sale of his property located at 3843 Fairmount Avenue;

- "Pressed" for dismissal of his Pennsylvania bankruptcy case "based on inaccurate personal tax claims that the city generated from 2005 through 2020," during which time Mr. Ituah claims did not reside in Philadelphia;

- "Deceiv[ed]" the bankruptcy trustee in his [Pennsylvania] case by presenting the assessed value of his property at 33rd S. 53rd Street as $210,000;

- Failed to apply settlement payments received by the City and continued to "create bills and claims already paid"; and

- "Engineered" inaccurate bill collections.

*See* SAppx025 (Am. Compl. ¶ 5).

Regarding his first claim that Ms. Thurmond encouraged demolition of the Tabor Property, the record reflects that Ms. Thurmond had no knowledge of the Tabor Property's condemnation until Mr. Ituah filed the instant case. SAppx027. Mr. Ituah offers no contradictory evidence other than misplaced accusations of suggestive timing.[10] Indeed, Mr. Ituah acknowledged that it was actually a police

---

[10] Mr. Ituah claims that the timing between the dismissal of his New York bankruptcy (December 2018) and demolition of the Tabor Property (January 2019) somehow implied Ms. Thurmond's role in the latter. Ituah Br. at 12. Although unclear, Mr. Ituah seems to argue that Ms. Thurmond waited until dismissal of the bankruptcy to encourage demolition because the "automatic stay" a debtor enjoys from interference with estate property would have prevented such action during the life of the bankruptcy case. *Id.* (suggesting Thurmond incited demolition because she knew that Ituah's "bankruptcy protection was over"); *see*

officer's observations of the Tabor Property—not Ms. Thurmond's animus—that prompted its condemnation. SAppx134-35 (Am. Compl. ¶¶ 4-5); Ituah Br. at 8.

Second, Mr. Ituah claimed that the $11,112.54 check Ms. Thurmond provided to the New York bankruptcy trustee (excess proceeds from the sheriff's sale) was too low. SAppx126. But, the amount of the check matches exactly the amount shown as excess proceeds on the Sheriff's Title Distribution Report. *See* SAppx042-51. Even if the amount were incorrect, however, the Sheriff's Office made this calculation with its third-party title contractor. *Id.*; *see supra* note 7. Ms. Thurmond merely transmitted the check as the City's agent in the bankruptcy proceedings. SAppx024-25 (Thurmond Decl. ¶¶ 11-17). Thus, while Ms. Thurmond transmitted the check Mr. Ituah complains of, she did not retaliate against him by altering or influencing its amount.

Next, Mr. Ituah claimed that Ms. Thurmond retaliated against him during his 2020 Pennsylvania bankruptcy, alleging she (1) "pressed" for its dismissal based on inaccurate tax information and (2) "deceived" the trustee by providing an inaccurate

---

11 U.S.C. § 362(a)(6) (providing that a bankruptcy petition "operates as a stay, . . . of . . . any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case"). But, Mr. Ituah bases his argument on misconceptions about bankruptcy law. In fact, the City could have demolished the Tabor Property at any point during the New York bankruptcy using its regulatory and police powers. *See* 11 U.S.C. § 362(b)(4) (exception to the "automatic stay" allowing government "to enforce [its] police and regulatory power"). As such, Mr. Ituah's allusions to suggestive timing between the two events falls flat.

valuation of his 53rd Street property in the Tax Proof of Claim. SAppx135-36 (Am. Compl. ¶ 5). Mr. Ituah failed to show that any of these allegations were true, let alone that they were somehow retaliatory.

First, it is undisputed that the bankruptcy trustee—*not* Ms. Thurmond—moved to dismiss his Pennsylvania case based on Mr. Ituah's delay. SAppx026; SAppx102. And, he did not point to any evidence suggesting that Ms. Thurmond improperly influenced the trustee to dismiss based on inaccurate tax information, as he claims.

Second, while an objection Ms. Thurmond filed on behalf of the City referenced $210,355.00 as the value of Mr. Ituah's 53rd Street property, Mr. Ituah adduced absolutely no evidence that this information was incorrect or that Ms. Thurmond was aware of any error. SAppx025-26; SAppx107-09.[11] And, *even if* the valuation were incorrect, Mr. Ituah would not be able to infer causation based on timing alone, as over two years had passed between these incidents (which occurred during the Pennsylvania bankruptcy) and his protected conduct, the March 2018

_____

[11] And, as set forth above, another City attorney, Megan Harper, not Ms. Thurmond, filed the Tax Proof of Claim which contained the $210,355.00 valuation in the first instance. For the first time on appeal, Mr. Ituah insists that Ms. Thurmond influenced Ms. Harper to make this filing, but even if this argument were not waived (it is), he does not support this bare assertion with any evidence. Ituah Br. at 6; *see, e.g.*, *MD Mall Assocs., LLC v. CSX Transp., Inc.*, 715 F.3d 479, 486 (3d Cir. 2013) (arguments asserted for the first time on appeal are waived absent exceptional circumstances).

filing[12] of his New York bankruptcy case. *See, e.g.*, *Estate of Smith v. Marasco*, 318 F.3d 497, 512 (3d Cir. 2003) (for timing alone to infer a "causal link," the timing of the alleged retaliation "must be unusually suggestive of retaliatory motive," finding 19 months was too long to make such inference).

Lastly, Mr. Ituah's final two allegations of are somewhat amorphous in that he claims Ms. Thurmond failed to credit various accounts to reflect payments to the City and "engineered" inaccurate bill collections.[13] SAppx135-36 (Am. Compl. ¶ 5). Ms. Thurmond presented a sworn statement in discovery that she simply has no involvement in any of these processes and had no communication with those who do regarding any of Mr. Ituah's accounts with the City. SAppx024-27. Mr. Ituah

---

[12] Because this Court found that Mr. Ituah's protected conduct was the *filing* of his New York bankruptcy case. *See* SAppx148 ("[W]e more broadly read his pleadings as alleging that the retaliatory actions were in response to his *initiation* of bankruptcy proceedings in New York, which necessitated Thurmond's participation." (emphasis added)). As such, the *dismissal* of the case is not the correct temporal benchmark, contrary to Mr. Ituah's arguments.

[13] Mr. Ituah also suggests that Ms. Thurmond's testimony in bankruptcy court regarding Mr. Ituah's attorney's fee petition was retaliatory, a claim absent from the amended complaint and first raised at summary judgment. He repeats this allegation in his appellate brief. *See* Ituah Br. at 6. To the extent this new allegation falls within his general accusation that Ms. Thurmond "engineered" inaccurate bills, Mr. Ituah provides nothing by way of evidence or argument that his attorney's bill was inaccurate or inappropriate. Even if not otherwise waived, this claim also fails because Ms. Thurmond is immune from constitutional claims arising from her testimony. *See, e.g.*, *Saunders v. BB&T Bank*, 852 F. App'x 651, 654-55 (3d Cir. 2021) (dismissing 1983 claim because defendant "protected by absolute immunity for testifying as a witness in a judicial proceeding" (citing *Rehberg v. Paulk*, 566 U.S. 356, 367)).

conceded this in discovery: when asked to identify the basis for these allegations, he explained that he meant that Ms. Thurmond filed a "statement of claims presented to the bankruptcy court" based on allegedly inaccurate bills prepared by others. SAppx150. Again, there is no evidence that this information was indeed inaccurate, let alone any indication that Ms. Thurmond knowingly (or even recklessly) "engineered" inaccurate information to present to the bankruptcy court.

In sum, Mr. Ituah's First Amendment retaliation claim fails because he failed to show that Ms. Thurmond was personally involved in the demolition of the Tabor Property, dismissal of the Pennsylvania bankruptcy, or in any of his various alleged miscalculations, even if true. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs[.]"). And even if Ms. Thurmond were personally involved, Mr. Ituah still did not evince any causal thread connecting the protected conduct (filing the New York bankruptcy in March 2018) to any of the alleged retaliation. Because there is no genuine dispute of material fact that Ms. Thurmond did not take the negative actions of which Mr. Ituah complains, the District Court properly found that Ms. Thurmond was entitled to summary judgment on this claim.

## CONCLUSION

For the foregoing reasons, Appellees Brendan Philbin, Joseph Carroll, and Pamela Thurmond respectfully request that this Court affirm the District Court's

November 6, 2023 Order granting Appellees' Motion for Summary Judgment.

Respectfully submitted,

CITY OF PHILA. LAW DEPARTMENT
RENEE GARCIA, ACTING CITY SOLICITOR
*/s/ Meghan Byrnes*
By: Meghan Byrnes, Esq.
Deputy City Solicitor, Appeals
City of Philadelphia Law Department
Appeals Unit
1515 Arch Street, 17th Floor
Philadelphia, PA 19102-1595
(215) 683-5011
meghan.byrnes@phila.gov
*Attorney for Appellees*

Date: February 23, 2024

**CERTIFICATION OF BAR MEMBERSHIP**

Pursuant to the Third Circuit Local Appellate Rule 46.1(e), I hereby certify that I am a member of the bar of this Court.

_/s/ **Meghan Byrnes**_

Meghan Byrnes, Esq.
City of Philadelphia Law Department

Date: February 23, 2024

# CERTIFICATION OF COMPLIANCE WITH RULE 32(a) AND REQUIREMENTS FOR ELECTRONIC FILING

Certificate of Compliance With Type-Volume Limitation,
Typeface Requirements, Type Style Requirements,
and Electronic Filing Requirements.

1.  This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains **5,217** words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

3.  Pursuant to the Third Circuit Local Appellate Rule 31.1(c), I hereby certify that the text of the electronic brief is identical to the text in the hard, paper copies of the brief.

4.  Pursuant to the Third Circuit Local Appellate Rule 31.1(c), I hereby certify that a virus detection program was performed on this electronic brief/file using CrowdStrike Falcon Sensor, and that no virus was detected.

*/s/ Meghan Byrnes*
Meghan Byrnes
City of Philadelphia Law Department
Date:  February 23,  2024

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

---

No. 23-3140

---

ABRAHAM ITUAH,

Appellant,

V.

CITY OF PHILADELPHIA, ET AL.

Appellees.

---

## SUPPLEMENTAL APPENDIX-
## VOLUME I

---

Appeal from the November 6, 2023 Order Granting Appellees' Motion for Summary Judgment Issued by the United States District Court for the Eastern District of Pennsylvania, the Honorable Gerald J. Pappert, at No. 19-cv-5088.

---

**CITY OF PHILADELPHIA LAW DEPT.**
**RENEE GARCIA, CITY SOLICITOR**

*/s/ Meghan A. Byrnes, Esq.*
By: Meghan Byrnes, Esq. (No. 321316)
Deputy City Solicitor
1515 Arch Street, 17th Floor
Philadelphia, PA 19102-1595
(215) 683-5011
meghan.byrnes@phila.gov
*Counsel for Appellee City of Philadelphia*

Date: February 23, 2024

# TABLE OF CONTENTS

**Volume I:**

1. Notice of Appeal dated December 4, 2023........................................SAppx001

2. District Court Order dated November 6, 2023 ................................SAppx004

3. District Court Opinion dated November 6, 2023.............................SAppx005

**Volume II:**

1. Civil Docket Sheet, Dist. Ct. No. 19-cv-05088-GJP .........................SAppx016

2. Declaration of Pamela Elchert Thurmond ......................................SAppx023

3. Bankruptcy Docket Sheet, No. 18-35408-cgm (Bankr. S.D.N.Y.) .....SAppx028

4. 8/8/2018 Letter from P. Thurmond to Ch. 13 Trustee encl. Title Distribution
   Report .....................................................................SAppx042

5. Civil Docket Sheet for Phila. Ct. Com. Pl. No. 181203469...............SAppx053

6. Pet. for TRO & Prelim. Inj., Phila. Ct. Com. Pl. No. 181203469 ......SAppx060

7. 1/3/19 Hr'g Tr., Phila. Ct. Com. Pl. No. 181203469 ........................SAppx078

8. 1/3/19 TRO, Phila. Ct. Com. Pl. No. 181203469 .............................SAppx087

9. Civil Docket Sheet, Pa. Cmwlth. No. 47 CD 2019 ..........................SAppx090

10. T. Rybakowski Affidavit, Pa. Cmwlth. No. 47 CD 2019 ................SAppx094

11. Bankruptcy Docket Sheet, No. 20-10058-amc (Bankr. E.D.Pa.)......SAppx095

12. Tax Proof of Claim Form, No. 20-10058 (Bankr. E.D. Pa.).............SAppx107

13. Complaint, No. 19-cv-05088 (E.D. Pa.)....................................SAppx125

14. Amended Complaint, No. 19-cv-05088 (E.D. Pa.) .........................SAppx133

15. 9/26/22 Opinion, No. 21-1213 (3d Cir.)....................................SAppx143

16. 1/10/19 AR Engineers Ltr.....................................................SAppx154

17. A. Ituah Interrogatory Responses ...........................................SAppx155

REC'D DEC 4 2023

From: **ITUAH ABRAHAM** aituah@aol.com
Subject: **Notice of Appeal**
   Date: **Dec 4, 2023 at 9:19:31 AM**
      To: **Chambers_of_Judge_Pappert@paed.uscourts.gov, Michael Pfautz**
         Michael.Pfautz@phila.gov, **ITUAH ABRAHAM** aituah@aol.com

---

# UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF UNITED STATES OF AMERICA

Abraham Ituah

    Plaintiff

    v.

    City of Philadelphia et Al

    Defendant

Case No. 2: 19-cv-05088

*NOTICE OF APPEAL*

Notice is hereby given that the United States of America, plaintiff Abraham Ituah in the above-captioned case, hereby appeals to the United States Court of Appeals for the Circuit from the order of this Court granting defendants summary judgment entered on *November 6 2023*. The order appealed from is requiring the return of demolished property within 15 days as a retaliation and fraudulent sales of property within 5 months without legitimate due process, include the following language: "I hereby certify that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding." The only presiding Judge in all cases was bias for dismissing my fraud action with prejudice and refusing to grant me appointed counsel to address the constitutional violation, as well as, denying my request for jury trial as I marked on the original complaints.

                Abraham Ituah

Date: 12/4/2023           Appellant

I hereby attached copy of the order received through email. I couldn't access or received the original copies of the order while I was in overseas and the court was notified.

**From:** ecf_paed@paed.uscourts.gov
**Date:** November 6, 2023 at 11:04:29 PM GMT+1
**To:** paedmail@paed.uscourts.gov
**Subject: Activity in Case 2:19-cv-05088-GJP ITUAH v. CITY OF PHILADELPHIA et al Order (Memorandum and/or Opinion)**

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* There is no charge for viewing**

opinions.

# United States District Court

# Eastern District of Pennsylvania

**Notice of Electronic Filing**

The following transaction was entered on 11/6/2023 at 5:03 PM EST and filed on 11/6/2023

**Case Name:**       ITUAH v. CITY OF PHILADELPHIA et al
**Case Number:**     2:19-cv-05088-GJP
**Filer:**
**Document Number:** 49

**Docket Text:**
**MEMORANDUM AND ORDER THAT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [41] IS GRANTED AND JUDGMENT IS ENTERED IN FAVOR OF DEFENDANTS AND AGAINST ITUAH ON ALL COUNTS. THE CLERK OF COURT SHALL MARK THIS CASE CLOSED. SIGNED BY HONORABLE GERALD J. PAPPERT ON 11/6/23. 11/6/23 ENTERED & E-MAILED.(fdc)**

**2:19-cv-05088-GJP Notice has been electronically mailed to:**

MICHAEL WU-KUNG PFAUTZ
 michael.pfautz@phila.gov, michael.pfautz.phila.gov@recap.email, nicole.osborn @phila.gov

ABRAHAM ITUAH    aituah@aol.com

**2:19-cv-05088-GJP Notice will not be electronically mailed to:**

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1001600548[Date=11/6/2023] [FileNumber=19269141-0]
[b0911c4d1421a07ecbe99550d4b6122540d832caeb0a57a198c3f96d4ddbb5cbaa
999adc95232858f5b1f0bd76baa99bd2695684487d77d532321b5e2c6036cc]]

### CERTIFICATE OF SERVICE

I hereby certify that on the date below, I filed Plaintiff Notice of Appeal to Defendants and Honorable Judge via the Court's electronic filing system and is available for downloading. I also certify that a copy of the Notice has been served upon the Defendants by email and first class mail, postage prepaid, as follows:
Chamber of Honorable Judge Pappert
Chamber_of_Judge_Pappert@paed.uscourt
Michael Pfautz
Deputy City Solicitor
Pa. Attorney ID No. 325323
City of Philadelphia Law Department 1515 Arch Street, 15th Floor
Philadelphia, PA 19102
215-683-5233

December 4 2023                    Abraham Ituah

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ABRAHAM ITUAH, | |
| *Plaintiff,* | CIVIL ACTION |
| v. | NO. 19-5088 |
| CITY OF PHILADELPHIA, et al., | |
| *Defendants.* | |

## ORDER

**AND NOW**, this 6th day of November 2023, upon consideration of Defendants'
Motion for Summary Judgment, (ECF 41), Ituah's Response, (ECF 42), Defendants'
Reply, (ECF 43), and Ituah's Sur-reply, (ECF 46), it is **ORDERED** that Defendants'
Motion is **GRANTED** and **JUDGMENT IS ENTERED** in favor of Defendants and
against Ituah on all counts.

The Clerk of Court shall mark this case **CLOSED**.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.

SAppx004

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ABRAHAM ITUAH, | |
| *Plaintiff,* | CIVIL ACTION |
| v. | NO. 19-5088 |
| CITY OF PHILADELPHIA, et al., | |
| *Defendants.* | |

**Pappert, J.**                                                            **November 6, 2023**

<u>**MEMORANDUM**</u>

Abraham Ituah, acting *pro se*, sued the City of Philadelphia and individual City employees, alleging various constitutional violations arising from the City's sale of his property at 3843 Fairmount Avenue (the "Fairmount Property") and the demolition of his property at 508 W. Tabor Street (the "Tabor Property").  The Court previously dismissed all claims.

The Third Circuit Court of Appeals affirmed the dismissal of all claims against the City, Ituah's First Amendment claim against employee Roslyn Speller and all Fourth Amendment, equal-protection and tax-related claims against individual employees, but vacated the dismissal of his First Amendment retaliation claim against attorney Pamela Thurmond and Fifth Amendment Takings Clause claim against attorney Brendan Philbin and Joseph Carrol, an inspector for the City's Department of Licenses and Inspection ("L&I").  After discovery, Thurmond, Philbin and Carrol moved

1

SAppx005

for summary judgment on these remaining claims.  After considering the parties'
submissions and reviewing the record, the Court grants the Motion for the reasons that
follow.

I

A

On March 16, 2018, Ituah filed for bankruptcy in the Southern District of New
York.  (Defs.' SUMF ¶ 14, ECF 41–24).  Thurmond represented the City of
Philadelphia, one of Ituah's creditors, in the bankruptcy proceeding.  (*Id.* at ¶ 15).
Because the case was in New York, Thurmond asked for Ituah's consent to appear by
telephone, but Ituah declined the request.  (*Id.*).  The New York Bankruptcy was
subsequently dismissed on December 10, 2018 based on Ituah's motion for voluntary
dismissal.  (*Id.* at ¶ 18).

While the case was pending, the Philadelphia Sheriff's Office was holding excess
proceeds owed to Ituah from the Sheriff's sale of the Fairmount Property.  (Thurmond
Decl., ¶ 11, ECF 41–15).  The Sheriff's Office had determined Ituah was owed
$11,112.54 from the Fairmount Property.  (Check Letter, p. 10, ECF 41–17).  Because
Ituah had filed for bankruptcy, Thurmond sent a letter to the bankruptcy trustee with
the Sheriff's check for the excess proceeds and a title distribution report listing the
amount owed to each distributee.  (Check Letter, p. 5; Thurmond Decl. at ¶ 15).

Ituah filed another bankruptcy case on January 6, 2020, this time in the Eastern
District of Pennsylvania.  (Defs.' SUMF ¶ 27).  Because Ituah still had outstanding
debts to the City, the City was notified and Thurmond was assigned the case.  (*Id.* at
¶ 28).  Thurmond filed proofs of claims for Ituah's debts with the City's Water Revenue

2

SAppx006

Bureau.  (Water Debt Proof of Claim 1, ECF 41-19; Water Debt Proof of Claim 2, ECF 41-20).  Another City attorney, Megan Harper, filed a proof of claim for Ituah's tax debts, which indicated that the City's claim was secured by Ituah's real estate.  (Tax Debt Proof of Claim, ECF 41–21).  The proof of claim for tax debt incorporated an exhibit listing Ituah's properties, including his 33 S. 53rd Street property valued at $210,355.  (*Id.* at p.8).

Ituah filed a proposed bankruptcy plan as part of the bankruptcy proceeding. (Pennsylvania Bankruptcy Docket, p. 4, ECF 41–18).  On July 7, 2020, Thurmond filed an objection to the bankruptcy plan based in part on the plan's failure to provide full payment on the City's claims.  (ECF 41–22).  The bankruptcy trustee subsequently filed a motion to dismiss the bankruptcy due to delay and it was granted on September 23, 2020.  (Pennsylvania Bankruptcy Docket, p. 10).

B

Between Ituah's two bankruptcy proceedings, on December 27, 2018, L&I inspector Carrol issued a Notice of Violation for Ituah's Tabor Property.  (Mot. to Demolish, Ex. A, ECF 41–4).  Carrol's inspection was in response to a report from the Police Department about a bulging wall.  (*Id.*).  Carrol determined the structure was in violation of the Philadelphia Code of General Ordinances, § PM-110, because it was in imminent danger of collapse.  (*Id.*).

Soon after, Philbin, on behalf of the City, filed a Petition for a Temporary Restraining Order and Preliminary Injunction in the Philadelphia Court of Common Pleas, to allow the City to demolish the Tabor Property.  (Tabor Dock. P. 4, ECF 41–3). At a hearing on the City's petition, City inspector Thomas Rybakowski, who also

3

SAppx007

inspected the Tabor Property, testified that the wall had separated from the window by several inches and it had "lost all of its structural integrity," the bracing for the wall was not permitted and improperly designed because it was only nailed into the ground, and the third floor of the structure had been illegally added without a permit thereby increasing the weight load on the wall.  (Ct. of Comm. Pleas Hr'g Tr., 13:24-14:20, 15:12-16:7, 16:18-17-13, ECF 41–6).  Rybakowski also presented photos showing the conditions he described and concluded that there was "the potential of a very serious collapse" of the building that would pose a danger to the public, remaining occupants of the property and the adjoining property.  (*Id.* at 16:18-17-13).  Ituah testified the Tabor Property could be repaired but did not present any evidentiary support or expert testimony.  (*Id.* at 17:14-16, 21-25).  Based on this record, the Court of Common Pleas found the structure was imminently dangerous and demolition was appropriate, (*Id.* at 25:7-26), and entered a temporary restraining order authorizing the City to demolish the property and for the Police Department to remove any occupants.  (ECF 41–8).  The City demolished the property two weeks later.  (Rybakowski Aff. ¶ 2, ECF 41–13).

C

Ituah filed a *pro se* 42 U.S.C. § 1983 action against the City of Philadelphia, the Philadelphia Police Department, and several City employees, alleging various constitutional violations arising from the City's 2015 sale of the Fairmount Property, and the 2019 demolition of the Tabor Property.  (ECF 1).

The Court dismissed all claims against all Defendants in Ituah's initial and amended complaints.  (ECF 9; ECF 18).  The Third Circuit affirmed the dismissal of all claims against the City, Ituah's First Amendment retaliation claim against employee

4

Roslyn Speller and all Fourth Amendment, equal-protection and tax-related claims against individual employees, but vacated and remanded this Court's decision with respect to the First Amendment retaliation claim against Thurmond and the Fifth Amendment takings claim against Philbin and Carrol. *Ituah v. City of Philadelphia*, No. 21-1213, 2022 WL 4464380, at *5 (3d Cir. Sept. 26, 2022).

The First Amendment retaliation claim involves a series of actions that Thurmond allegedly took against Ituah after Ituah filed for bankruptcy in New York, necessitating Thurmond's participation in the bankruptcy proceedings. (Am. Compl. ¶ 3, ECF 12). As to the Fifth Amendment Takings Clause claim, Ituah alleges that his rights were violated by Carrol and Philbin issuing a condemnation notice on the Tabor Property and Philbin filing "an action to demolish the property." (*Id.* at ¶ 4). Thurmond, Philbin and Carrol now move for summary judgment on these remaining claims.

## II

Summary judgment is proper if the movant proves that there is no genuine dispute as to any material fact and if the movant is entitled to judgment as a matter of law. *See Jutrowski v. Township of Riverdale*, 904 F.3d 280, 288 (3d Cir. 2018). A fact is "material" if it may affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine dispute" exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

SAppx009

*Id.* A mere scintilla of evidence supporting the nonmoving party, however, will not suffice. *See id.* at 252.

At summary judgment, a court may consider any material in the record that would be admissible at trial. *See* Fed.R.Civ. P. 56(c); *Pamintuan v. Nanticoke Memorial Hosp.*, 192 F.3d 378, 387–88 (3d Cir. 1999). In doing so, a court "must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Prowel v. Wise Bus. Forms*, 579 F.3d 285, 286 (3d Cir. 2009). But it may not make credibility determinations or weigh the evidence. *See Parkell v. Danberg*, 833 F.3d 313, 323 (3d Cir. 2016).

III

A

To prevail on a First Amendment retaliation claim, a plaintiff must prove that (1) he is engaged in constitutionally protected conduct, (2) the defendant engaged in retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) there was a causal link between the constitutionally protected conduct and the retaliatory action. *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 752 (3d Cir. 2019).

B

Ituah alleges Thurmond, who represented the City in Ituah's bankruptcy proceedings, took the following retaliatory actions as "soon as the New York State bankruptcy was dismissed": (1) "encouraged the licensing units" to demolish the Tabor Property; (2) sent Ituah a proceed check that was too small an amount and "contrary to court order issued" in 2015 for property; (3) "pressed the bankruptcy court to dismiss

6

[Ituah's] bankruptcy [case]"; (4) "presented to the bankruptcy court the assessed value of 33 S. 53rd Street, Philadelphia for $210,000 to deceive the bankruptcy trustee"; (5) failed to credit payments to Ituah's accounts and created bills already paid; and (6) "engineered inaccurate bills."  (Am. Compl. at 3-4, ¶ 5).

Ituah's filing of a petition for bankruptcy protection in federal court was protected conduct for purposes of his retaliation claim.  *See Safety-Kleen, Inc. v. Wyche*, 274 F.3d 846, 862 (4th Cir. 2001) (noting a retaliatory action taken in response to filing a bankruptcy petition would have constituted a viable First Amendment retaliation claim if the plaintiff had satisfied the other elements).  But Ituah's retaliation claim fails because there is no record evidence showing that Thurmond engaged in any alleged retaliation, or a causal link between such retaliation and Ituah's initiation of bankruptcy proceedings.

There is no evidence Thurmond had any connection to the demolition of the Tabor Property.  Ituah claims Thurmond should have known what actions others in the City government were allegedly taking against him, (Pl.'s Resp. to Mot. for Summ. Judg., p. 7-8, ¶¶ 50, 57-61), but a defendant in a civil rights action must be personally involved in the alleged wrongs.  *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).  The record includes no evidence of Thurmond's personal involvement in the demolition, any contact with officials in the Department of License and Inspection regarding Ituah's properties, or any knowledge of the Tabor Property's violation and demolition before Ituah sued Thurmond in this case.  (Thurmond Decl. ¶¶ 36-37).  And there is no evidence supporting Ituah's belief that the proximity of the New York bankruptcy case's dismissal and the demolition indicates causation.  *See* (Am. Compl. at

3-4, ¶ 5; Pl.'s Resp. to Mot. for Summ. Judg., p. 7, ¶ 58).  Contrary to Ituah's suggestion

that the demolition occurred shortly after the New York bankruptcy case's dismissal

because the bankruptcy stayed the demolition, there is an exception to bankruptcy

stays for litigation to enforce police powers—as was the case here.  *See* 11 U.S.C. §

362(b)(4); *infra* Section IV.

      Nor is there any evidence in the record to support Ituah's claim that the amount

of the August 2018 proceeds check Thurmond sent to the bankruptcy trustee was too

low or contrary to a court order in 2015.  The $11,112.54 amount of the check matches

the amount shown as excess proceeds on the title distribution report, (Check Letter, p.

10), and no court order or evidence shows otherwise.  And although Thurmond, in her

role as the City's attorney, mailed the check to Ituah, (Defs.' SUMF ¶¶ 20-21), there is

no evidence showing Thurmond was involved in determining the excess proceeds

check's amount.

      The claims that Thurmond pressed the bankruptcy court to dismiss Ituah's

Pennsylvania bankruptcy case and presented false information about the value of

Ituah's property also lack any evidentiary support.  The record shows it was the

bankruptcy trustee, not Thurmond, who moved to dismiss the bankruptcy case.

(Thurmond Decl. ¶ 25; ECF 41-1).  Thurmond did reference the proof of claim for

Ituah's tax debt and the S. 53rd Street's valuation when objecting, on behalf of the City,

to Ituah's proposed bankruptcy plan.  (City Object., ECF 41-22).  But it was attorney

Megan Harper—not Thurmond—who filed the proof of claim for tax debt.  (Tax Proof of

Claim, ECF 41-21).  Ituah points to nothing in the record from which a jury could find

that the proof of claim was wrong or that Thurmond was aware of any error.

Ituah contended that Thurmond was aware of the City's payment records, (Pl.'s Resp. to Mot. for Summ. Judgment, p. 8, ¶ 63), but there is no evidence that Thurmond had any involvement in crediting payments to Ituah's accounts or communication with those who do.  There is also no evidence that Thurmond had any role in calculating or sending Ituah's utility and tax bills, or communication about the bill amounts with those who do.  In discovery, Ituah explained that when he alleged Thurmond "engineered inaccurate bills collection" he meant that Thurmond filed the "statement of claims presented to the bankruptcy court" based on allegedly inaccurate bills prepared by others.  (Ituah Inter., p. 7, ¶ 4, ECF 41-14).  There is no evidence of Thurmond doing anything of the sort.

IV

A

The Takings Clause of the Fifth Amendment provides that private property shall not 'be taken for public use, without just compensation.' U.S. Const. amend. V.  This prohibition applies to state and local governments under the Fourteenth Amendment. *Cowell v. Palmer Twp.*, 263 F.3d 286, 290 (3d Cir. 2001).  There is no requirement that a claimant exhaust state remedies before bringing a Takings Clause claim to federal court.  *Knick v. Twp. of Scott, Pennsylvania*, 139 S. Ct. 2162, 2167 (2019). However, property is not "taken" where a city or other appropriate public authority has acted pursuant to its right and obligation to ensure public safety in remediating a dangerous condition.  *See In re 106 N. Walnut, LLC*, 447 F. App'x 305, 309 (3d Cir. 2011) ("A municipality may, in the exercise of its police power, without compensation destroy a building or structure that is a menace to the public safety or welfare, or require the

9

SAppx013

owner to demolish the dangerous piece of property.").

B

Section 110 of the Philadelphia Property Maintenance Code exists "to ensure public health, safety, and welfare insofar as they are affected by the continued occupancy and maintenance of structures and premises" and governs the inspection, citing, noticing and demolition of imminently dangerous structures. *See* PM Code §§ PM-101.3, PM-110 *et. seq.* City officials are authorized to inspect buildings and classify them as "imminently dangerous." *Id.* at § PM-110.1. A structure is defined as such when there is "imminent danger of failure or collapse of a structure or any part thereof which endangers life, or when any structure or part of a structure has fallen and life is endangered by the occupation of the structure." *Id.* If city officials determine a building is imminently dangerous, they are then required to notify the property owner in writing with a description of the imminently dangerous condition, specifying the required repair to make, or requiring the imminently dangerous structure to be demolished within a stipulated time. *Id.* at § PM-110.2.

Ituah argued that the Tabor Property was not imminently dangerous, pointing to the fact that the structure did not collapse on its own during the two weeks between the Notice of Violation and the Demolition, and that it was "repairable." (Pl.'s Resp. to Mot. for Summ. Judg. at 6-7 ¶¶ 44, 49, ECF 43).

But the evidence shows, and Ituah does not dispute, that the structure could not remain safely in its then condition. Multiple inspectors determined the structure was imminently dangerous. *See* (Mot. to Demolish; Ct. of Comm. Pleas Hr'g Tr.). The Philadelphia Court of Common Pleas considered all evidence offered by the City and

10

SAppx014

Ituah and found that the structure was imminently dangerous and that demolition was appropriate.  (ECF 41–8).   Ituah does not provide any evidence substantiating the core elements of a Takings Claim.  The City, through Philbin and Carrol, acted to protect public safety pursuant to the City's police power, not eminent domain.

An appropriate Order follows.

BY THE COURT:

**_/s/ Gerald J. Pappert_**
GERALD J. PAPPERT, J.

11

SAppx015

<u>**CERTIFICATE OF SERVICE**</u>

I, Meghan Byrnes, hereby certify that I caused to be served today the foregoing **Brief for Appellees** and attached **Volume I of the Supplemental Appendix** upon the persons and in the manner indicated below:

<u>Via First Class Mail:</u>

Abraham Ituah
419 W Godfrey Avenue
Philadelphia, PA 19120
*Appellant*

Abraham Ituah
92 Robinson Ave.
Newburgh, NY 12550
*Appellant*

*/s/ Meghan Byrnes*
Meghan Byrnes
City of Philadelphia Law Department

Date: February 23, 2024